Filed
D.C. Superior Court
06/16/2016 18:49PM
Clerk of the Court

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | | |
|---|---|---|
| SCOTT YURCHESHEN, <br> individually and on behalf of <br> 26 Q Street Condo Association <br> 26 Q Street, N.E., Unit 2 <br> Washington, D.C. 20002 <br><br> JESSICA TORRES <br> 26 Q Street, N.E., Unit 2 <br> Washington, D.C. 20002 <br><br> AARON WODIN-SCHWARTZ <br> 26 Q Street, N.E., Unit 1 <br> Washington, D.C. 20002 <br><br>     Plaintiffs, <br><br> v. <br><br> 26 Q STREET LLC <br> Serve: Benjamin Soto, Registered Agent <br> 1534 14th Street, N.W. <br> Washington, D.C. 20005 <br><br> INSUN S. HOFGARD <br> 9385 Juhasz Drive <br> Great Falls, VA 22066-2026 <br><br> JULIO ARGUETA <br> 7554 Kingman Drive <br> Annandale, VA 22003 <br><br> ARGUETA GENERAL CONTRACTOR INC. <br> a/k/a Argueta Contractors, Inc. <br> 7554 Kingman Drive <br> Annandale, VA 22003 <br> Serve: Julio Argueta, Registered Agent <br><br>     Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Case No. 2016 CA 004401 B <br><br><br><br><br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

1

## COMPLAINT

Plaintiffs Aaron Wodin-Schwartz, Scott Yurcheshen and Jessica Torres, by their undersigned counsel, sue the Defendants, 26 Q Street LLC, Insun Hofgard, Julio Argueta and Argueta General Contractor Inc. a/k/a Argueta Contractors Inc., and in support state as follows:

## PARTIES

1. Plaintiff Scott Yurcheshen ("Yurcheshen") is a resident of the District of Columbia. He is also the president of the 26 Q Street Condo Association and brings this claim in his individual capacity and on behalf of the association.

2. Plaintiff Jessica Torres ("Torres") is a resident of the District of Columbia.

3. Plaintiff Aaron Wodin-Schwartz ("Wodin") is a resident of the District of Columbia.

4. Defendant 26 Q Street LLC (the "Company") is a limited liability company organized under the laws of the District of Columbia.

5. Defendant Insun Hofgard ("Hofgard") is a resident of the Commonwealth of Virginia who regularly purchases and sells real estate and conducts business in the District of Columbia. She is a member of 26 Q Street LLC.

6. Defendant Julio Argueta ("Argueta") is a resident of the Commonwealth of Virginia who regularly purchases and sells real estate and conducts business in the District of Columbia. He is a member of 26 Q Street LLC.

7. Defendant Argueta General Contractor Inc. a/k/a Argueta Contractors, Inc. ("AGC") is a corporation organized under the laws of the Commonwealth of Virginia that regularly conducts business in the District of Columbia.

## JURISDICTION

8. This Court has subject matter jurisdiction pursuant to the District of Columbia Code, Section 11-921(a)(6), and personal jurisdiction over the Defendants pursuant to District of Columbia Code, Sections 13-423(a)(1), (a)(3) and (a)(5).

## INTRODUCTION

9. Hofgard and Argueta are in the business of purchasing dilapidated residential properties in the District of Columbia for the purpose of renovation and resale. They obtain approval from the District of their proposed building plans but intentionally deviate from the plans to save costs or create a more marketable property. They renovate the properties using unlicensed contractors who perform sub-standard work in violation of the building code and zoning regulations. Then they sell the properties under false pretenses at a substantial profit.

10. Argueta and his company, AGC, regularly perform illegal construction work in the District of Columbia as neither is licensed by the Department of Consumer and Regulatory Affairs (DCRA).

11. The defendants have victimized many individuals in the District of Columbia. In 2015, this Court found Hofgard and her husband, Jefferson Hofgard, responsible for multiple violations of D.C. law and fined them over $300,000. Further, on behalf of the District of Columbia, the Office of the Attorney General has sued the Hofgards for ignoring stop work orders and repeated violations of consumer protection laws and construction laws in relation to 28 properties, including the property that is the subject of this lawsuit. After several months of litigation, the Hofgards agreed to fund a "Restitution Account" of $1,300,000.

## BACKGROUND FACTS

12. In December 2012, Hofgard and Argueta formed 26 Q Street LLC (the "Company") for the purpose of purchasing, subdividing, renovating and re-selling a row house located at 26 Q Street, N.E. (the "Property"). Hofgard served as the company's Managing Member and closed on the purchase of the Property in January, 2013 for the sum of $385,000.

13. Hofgard subdivided the Property into two condominium units through a Plat and Plans of Condominium Subdivision recorded with the Office of Tax and Revenue.

14. Hofgard submitted building plans to DCRA to convert the Property into a two family flat, underpin the existing basement, lower the basement floor by eight (8) inches and install new electrical, plumbing and HVAC systems. The permit did not allow for any expansion of the property.

15. In April 2013, DCRA approved the plans and issued a building permit for the proposed construction.

16. The defendants conspired to deviate from the approved plans and renovate the Property in violation of applicable zoning and building codes. They demolished the interior of the Property, including floors, ceilings, walls and structural elements, then installed joists and rafters that do not comply with the structural requirements of the building code. They installed light fixtures that were not properly rated for UL assembly. The floor and ceiling assemblies did not have the minimum one-hour fire resistant rating; fireblocking was not installed at ceiling levels; a lower bedroom did not have a necessary egress window; the plumbing and electrical work exceeded the scope of the permits; and there were many other violations.

17. Further, the defendants constructed an illegal addition at the rear of the Property with large exterior decks that were not approved. In particular, the addition exceeded the lot coverage permitted by the District.

18. In May 2013, DCRA inspector Robert Spriggs inspected the Property and noted that the work was "not according to the plans and code." He also noted fire-rated walls and roof not to plan, wood into brick wall, holes in the wall and roof not fire rated.

19. The defendants continued working on the Property but did *not* take steps to bring it into compliance with the approved plans or code.

20. On February 15, 2014, Hofgard signed an affidavit under oath that adopted the statements in an engineering report for purposes of filing the mandatory Public Offering Statement with the District of Columbia. The report falsely represented that the roofing, structural, electrical, plumbing and HVAC systems were all installed in conformance with the District of Columbia and National Building Codes.

21. In order to avoid oversight and detection by DCRA, Hofgard and Argueta used a third-party inspection agency, CAMJAP Inspection Agency, to review and approve the project. In April 2014, CAMJAP issued several "Third-Party Inspection Completion Certifications" stating that a final inspection had been conducted and the plumbing, electrical and mechanical systems and the building itself were complete and conformed with the construction documents approved by DCRA. CAMJAP also issued a "Third-Party Inspection Certificate of Occupancy Certification" stating that the building, plumbing, mechanical and electric were substantially completed and complied with the construction documents approved by DCRA.

22. Prior to obtaining a Certificate of Occupancy from DCRA, the defendants listed the Property for sale with Keller Williams Realty. Unit 1 was listed for sale at $569,000 and

Unit 2 at $679,000. The promotional literature boasted of "ALL NEW RENOVATIONS," and falsely claimed the Property could be occupied: "Beautifully renovated multi-level condo is ready to move in! Spacious, open floor plans, state of the art appliances, new fixtures, hardwood flooring throughout, 2 master suites and MORE! A must see!"

23. Meanwhile, DCRA continued its review of the Property. On or about August 20, 2014, a wall check submitted to DCRA failed a zoning review and a zoning hold was placed on the Property.

24. In September 2014, DCRA inspector Delaine Englebert inspected the Property and noted that the project "appeared to be completed." She checked the permitting history and noticed the zoning hold. In a subsequent meeting with Hofgard the inspector explained that "the addition to the property needed to be addressed." The inspector advised Hofgard *not* to sell the property until all issues had been resolved.

25. The defendants ignored DCRA's directive and moved forward with the sale of both units at the Property without resolving the zoning issues and without a Certificate of Occupancy.

**Yurcheshen and Torres's purchase of Unit 2**

26. In August 2014, Yurcheshen and Torres were lured to the Property after reading the defendants' promotional materials touting "ALL NEW RENOVATIONS." They toured Unit 2 with their real estate agent and reviewed the Seller's Property Condition Statement.

27. The defendants made certain representations in the Seller's Property Condition Statement concerning Unit 2, including that that the roof was 0-5 years old and that they had no knowledge of leaks or evidence of moisture from the roof; no knowledge of leaks or evidence of moisture in the basement; no knowledge of structural defects in the foundation, walls or floors;

no knowledge of defects in the heating system; and no knowledge of defects with the plumbing system.

28. The defendants intentionally did not notify Yurcheshen or Torres that DCRA had flagged the Property for non-compliance with the approved plans and building code.

29. In reliance on all the defendants' representations about the Property and without knowing material facts concealed by the defendants, Yurcheshen and Torres offered to purchase Unit 2 on August 24, 2014 for $689,000, which was $10,000 over the list price.

30. Hofgard accepted the offer and counter-signed the agreement on August 27, 2014.

31. Yurcheshen and Torres hired a private home inspector to inspect the condition of the Unit 2 and prepare a report. The home inspector was only able to inspect the easily visible aspects of Unit 2, which excluded the roof, structural elements and lighting, electrical, plumbing and HVAC systems hidden behind walls and ceilings. The inspector also was not qualified to analyze zoning issues or asked to confirm that the work complied with the approved plans.

32. Hofgard later disclosed that she could not close on the sale of Unit 2 due to zoning issues related to the rear deck. She did not mention any concerns about the addition.

33. On or about January 8, 2015, the defendants obtained a new building permit to reduce the size of the decks on the 2nd and 3rd floors. Thereafter, the defendants reduced the size of the rear decks.

34. On January 29, 2015, the defendants obtained a Certificate of Occupancy from DCRA for the Property to be occupied as a "Two Family Flat."

35. The parties finally closed on the sale of Unit 2 on or about February 19, 2015. At closing, Hofgard issued a two-year warranty as required by the D.C. Condominium Act.

### Wodin's purchase of Unit 1

36. In December 2014, Wodin was also lured to the Property by the defendants' representations about "ALL NEW RENOVATIONS." He visited Unit 1 with his real estate agent and reviewed the Seller's Property Condition Statement.

37. Hofgard made certain representations in the Seller's Property Condition Statement concerning Unit 1, including that that the roof was 0-5 years old and that they had no knowledge of leaks or evidence of moisture from the roof; no knowledge of leaks or evidence of moisture in the basement; no knowledge of structural defects in the foundation, walls or floors; no knowledge of defects in the heating system; and no knowledge of defects with the plumbing system. In addition, Hofgard answered "No" to the following question: "Does the seller have actual knowledge of any zoning violations, nonconforming uses, violation of building restrictions or setback requirements, or any recorded or unrecorded easement, except for utilities, on or affecting the property?"

38. The defendants intentionally did not notify Wodin that DCRA had flagged the Property for non-compliance with the approved plans and building and zoning codes.

39. In reliance on all the defendants' representations about the Property and without knowing material facts concealed by the defendants, Wodin offered to purchase Unit 1 on December 1, 2014 for $584,000, which was $15,000 over the listing price. Hofgard accepted and counter-signed the contract on December 8, 2014.

40. The sale was contingent on a home inspection and Wodin retained a private home inspector to conduct an inspection and prepare a report. The home inspector was only able to inspect the visible items in Unit 1, which excluded the roof, structural elements and electrical,

plumbing and HVAC systems hidden behind walls and ceilings. He also was not qualified to analyze zoning issues or asked to confirm that the work complied with the approved plans.

41.   The inspector listed 40 items in his report that required repair or replacement. The defendants agreed to repair or replace the items under an addendum to the contract, but they failed to do so.

42.   Hofgard later disclosed that she could not complete the sale due to zoning issues related to the rear deck. In December 2014, the parties signed an addendum to the contract that allowed Wodin to void the contract if the defendants were required to alter the deck. The defendants failed to disclose that there was still a zoning issue with the rear addition.

43.   As described above, the defendants reduced the size of the decks. Wodin was unhappy with this development but elected to proceed to closing.

44.   On or about February 27, 2015, the parties closed on the sale of Unit 1. At closing, Hofgard issued a two-year warranty as required by the D.C. Condominium Act. The parties also amended the repair addendum to include four (4) additional items that required repair.

45.   Hofgard and Argueta attended the closing. They both told Wodin to contact Argueta of any other items that needed repair.

### Discovery of Defects and Code Violations

46.   After closing, Argueta attended to a few, but not all, of the items on Wodin's repair list and addendum. Further, some of his repairs were deficient. Hofgard also sent another handyman named "Rosh" who began making unauthorized repairs and tried to replace the furnace without Wodin's knowledge or consent.

47. Then Wodin received a letter from DCRA with an alarming announcement: "A recent review of agency records revealed potential issues with pre-sale renovation of your property. It appears that the construction may not have been in full compliance with District laws pertaining to construction, permitting, and construction inspections."

48. On April 10, 2015, DCRA inspector Delaine Englebert inspected the Property and issued a report that noted 23 code violations in Unit 1 and another report noting 18 code violations in Unit 2. She added that "My inspection remains incomplete as there was no sheetrock removed during my visit." The inspector also issued multiple Notices of Infractions in relation to the code violations.

49. Wodin, or his real estate agent, notified Hofgard of the DCRA inspection and code violations but she was non-responsive. Thereafter, Wodin learned of Hofgard's violations at many other properties in the District.

50. The plaintiffs began investigating the condition of the Property in more depth and discovered additional latent construction defects and code violations.

51. After experiencing some leaks through the ceiling, the plaintiffs hired a licensed roofing company to inspect the roof. The roofer noted defects such as the lack of weather tight seals or pitch pockets for the HVAC lines, perimeter metal installed incorrectly, and incorrect flashing.

52. The plaintiffs hired a licensed structural engineer to inspect the structural components of the Property. The engineer opened the ceilings and found "significant structural deviations" from the approved building plans, including floor framing joists supporting the 1st, 2nd and 3rd floors that deviated from the approved plans and were inadequate to support the load requirements required by code; and composite girders supporting the roof rafters that deviated

from the approved plans and were structurally inadequate. The engineer recommended replacement or reinforcement of these structural elements on a "priority" basis.

53. The plaintiffs also hired a licensed home inspector remove portions of the walls and ceilings to conduct a more thorough inspection. The inspection revealed additional latent defects and code violations.

54. The plaintiffs retained a licensed general contractor to estimate the cost to correct the defects and code violations. The contractor provided a preliminary estimate of $175,650. This estimate does not include potential costs related to bringing the rear addition in compliance with zoning regulations.

55. Further, the plaintiffs will incur moving and apartment rental costs to relocate from the property during the construction necessary to repair the defects and code violations.

**CLAIMS BY SCOTT YURCHESHEN and JESSICA TORRES:**

<u>**COUNT I**</u>
**(Violation of Consumer Protection Procedures Act – all Defendants)**

56. Plaintiffs Yurcheshen and Torres incorporate herein by reference the allegations in paragraphs 1 through 55 above.

57. The defendants violated the Consumer Protection Procedures Act by engaging in unlawful and deceptive trade practices and conspiring together to do so.

58. The defendants made misrepresentations as to material facts concerning the Property that had a tendency to deceive; failed to state material facts about the Property when such failure tends to mislead; represented that the Property had characteristics that it did not have; and represented that the Property was of a particular quality that it was not.

59. The plaintiffs suffered substantial damages as a result of the defendants' unlawful and deceptive trade practices.

60.     The defendants' violations of the CPPA justify the imposition of treble and punitive damages.

## COUNT II
### (Intentional Misrepresentation – all Defendants)

61.     Plaintiffs Yurcheshen and Torres incorporate herein by reference the allegations in paragraphs 1 through 55 above.

62.     The defendants, and/or their authorized agents, asserted false representations of material fact to the plaintiffs and omitted material facts, and conspired with one another to do so.

63.     The defendants knew the representations were false when they made them, or the representations were made with such reckless disregard for the truth that knowledge of falsity of the statement can be imputed to the defendants.

64.     The defendants made the false representations and material omissions of fact for the purpose of defrauding the plaintiffs.

65.     The plaintiffs relied with justification upon the misrepresentations and omissions.

66.     The plaintiffs suffered damages as a direct result of their reliance on the misrepresentations and omissions.

## COUNT III
### (Negligent Misrepresentation – all Defendants)

67.     Plaintiffs Yurcheshen and Torres incorporate herein by reference the allegations in paragraphs 1 through 55 above.

68.     The defendants made false representations and omitted material facts about the Property in their marketing materials and in the Seller's Property Condition Statement.

69.     The representations and omissions involved material issues.

70. The plaintiffs reasonably relied upon the misrepresentations and omissions to their detriment.

71. The plaintiffs suffered damages as a direct result of their reliance on the misrepresentations and omissions.

## COUNT IV
### (Breach of Warranty – the Company)

72. Plaintiffs Yurcheshen and Torres incorporate herein by reference the allegations in paragraphs 1 through 55 above.

73. The Company issued a two-year warranty for Unit 2.

74. The plaintiff notified the defendants of defects in the structural elements and other aspects of the unit.

75. The Company failed to correct the defects as required by the warranty, which constitutes a material breach of the warranty.

76. The plaintiff has suffered damages as a result of the Company's breach.

## COUNT V
### (Breach of Covenant of Good Faith and Fair Dealing – the Company, Hofgard, Argueta)

77. Plaintiffs Yurcheshen and Torres incorporate herein by reference the allegations in paragraphs 1 through 55 above.

78. The contract for the sale of Unit 2 contained an implied covenant of good faith and fair dealing.

79. As described above, the defendants engaged in bad faith or conduct that was arbitrary and capricious.

80. The defendants' actions breached the implied covenant of good faith and fair dealing.

81. The plaintiffs suffered damages as a result of such breach.

13

WHEREFORE, Plaintiffs Scott Yurcheshen and Jessica Torres demand judgment against the Defendants, jointly and severally, for:

1) Compensatory damages in the sum of Two Hundred Thousand Dollars ($200,000);
2) Treble damages;
3) Punitive damages;
4) Reasonable attorney's fees;
5) Costs of this lawsuit; and
6) Such other and further relief as the Court or jury deems just and proper.

**CLAIMS BY AARON WODIN-SCHWARTZ:**

### COUNT VI
**(Violation of Consumer Protection Procedures Act – all Defendants)**

82. Plaintiff Wodin incorporates herein by reference the allegations in paragraphs 1 through 55 above.

83. The defendants violated the Consumer Protection Procedures Act by engaging in unlawful and deceptive trade practices and conspiring together to do so.

84. The defendants made misrepresentations as to material facts concerning the Property that had a tendency to deceive; failed to state material facts about the Property when such failure tends to mislead; represented that the Property had characteristics that it did not have; and represented that the Property was of a particular quality that it was not.

85. The plaintiff suffered substantial damages as a result of the defendants' unlawful and deceptive trade practices.

86. The defendants' violations of the CPPA justify the imposition of treble and punitive damages.

## COUNT VII
### (Intentional Misrepresentation – all Defendants)

87. Plaintiff Wodin incorporates herein by reference the allegations in paragraphs 1 through 55 above.

88. The defendants, and/or their authorized agents, asserted false representations of material fact to the plaintiff and omitted material facts, or conspired with one another to do so.

89. The defendants knew the representations were false when they made them, or the representations were made with such reckless disregard for the truth that knowledge of falsity of the statement can be imputed to the defendants.

90. The defendants made the false representations and material omissions of fact for the purpose of defrauding the plaintiff.

91. The plaintiff relied with justification upon the misrepresentations and omissions.

92. The plaintiff suffered damages as a direct result of their reliance on the misrepresentations and omissions.

## COUNT VIII
### (Negligent Misrepresentation – all Defendants)

93. Plaintiff Wodin incorporates herein by reference the allegations in paragraphs 1 through 55 above.

94. The defendants made false representations and omitted material facts about the Property in their marketing materials and in the Seller's Property Condition Statement.

95. The representations and omissions involved material issues.

96. The plaintiff reasonably relied upon the misrepresentations and omissions to their detriment.

97. The plaintiff suffered damages as a direct result of their reliance on the misrepresentations and omissions.

## COUNT IX
### (Breach of Warranty – the Company)

98. Plaintiff Wodin incorporates herein by reference the allegations in paragraphs 1 through 55 above.

99. The Company issued a two-year warranty for Unit 1.

100. The plaintiff notified the defendants of defects in the structural elements and other aspects of the unit.

101. The Company failed to correct the defects as required by the warranty, which constitutes a material breach of the warranty.

102. The plaintiff has suffered damages as a result of the Company's breach.

## COUNT X
### (Breach of Contract – the Company)

103. Plaintiff Wodin incorporates herein by reference the allegations in paragraphs 1 through 55 above.

104. The parties signed a Home Inspection Contingency Notice and/or Addendum under which the defendant agreed to repair or replace items listed in an inspection report, including additional items added at closing.

105. The defendant failed to repair or replace all of the items listed in the report, which constitutes a material breach of contract.

106. The plaintiff has suffered damages as a result of the defendant's breach.

## COUNT XI
**(Breach of Covenant of Good Faith and Fair Dealing – the Company, Hofgard, Argueta)**

107. Plaintiff Wodin incorporate herein by reference the allegations in paragraphs 1 through 55 above.

108. The contract for the sale of Unit 1 contained an implied covenant of good faith and fair dealing.

109. As described above, the defendants engaged in bad faith or conduct that was arbitrary and capricious.

110. The defendants' actions breached the implied covenant of good faith and fair dealing.

111. The plaintiff suffered damages as a result of such breach.

WHEREFORE, Plaintiff Aaron Wodin-Schwartz demands judgment against the Defendants, jointly and severally, for:

1) Compensatory damages in the sum of Two Hundred Thousand Dollars ($200,000);
2) Treble damages;
3) Punitive damages;
4) Reasonable attorney's fees;
5) Costs of this lawsuit; and
6) Such other and further relief as the Court or jury deems just and proper.

Respectfully submitted,

Michael G. Campbell
D.C. Bar No. 977584
MILLER, MILLER & CANBY
200-B Monroe Street
Rockville, Maryland 20850
(301) 762-5212
(301) 762-6044 facsimile
mgcampbell@mmcanby.com

*Counsel for Plaintiffs*

### DEMAND FOR JURY TRIAL

The Plaintiffs demand trial by jury on all issues so triable.

Michael G. Campbell